The undersigned have reviewed the Award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some minor technical modifications. The Full Commission, in their discretion have determined that there are no good grounds in this case to receive further evidence or to rehear the parties their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties, as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times and until October 6, 1993, the effective date of plaintiff's termination.
3. Allstate Insurance Company is the carrier on the risk.
4. Plaintiff sustained a work-related compensable injury to her back on January 14, 1992, while employed by defendant-employer. Defendants have admitted compensability pursuant to a Form 21 Agreement. The Form 21 was approved by the Industrial Commission on April 30, 1992. In accordance with the Form 21 Agreement, plaintiff was compensated at the rate of $238.32 per week, for necessary weeks.
5. The parties stipulated to the following:
a. Social Security earnings information.
b. Office note dated January 5, 1996 from Dr. James A. Sanders.
c. Physical therapy progress notes (66 pp.)
d. Office notes of Dr. Difini (2 pp.).
e. First Health records
f. Records of Dr. Alfred Rhyne (3 pp.).
 g. Gaston Memorial Hospital Emergency Room record dated July 20, 1994.
h. Diagnostic center records (8 pp.).
6. In addition, parties stipulated to the progress reports from Jane Shipp, Rehabilitation Nurse Consultant.
7. The issues to be resolved are:
 a. Is plaintiff's injury to her right knee causally related to her compensable back injury sustained January 14, 1992?
 b. Was plaintiff's termination from her job on October 6, 1993 due to reasons unrelated to her workers' compensation claim?
 c. Is plaintiff entitled to a change of physician pursuant to N.C. Gen. Stat. § 97-25?
 d. Is plaintiff entitled to any additional workers' compensation benefits as a result of the compensable injury to her back, and if so, to what?
 **********
Based upon all of the competent, credible, and convincing evidence of record and reasonable inferences drawn therefrom, the undersigned make the following additional
 FINDINGS OF FACT
1. Plaintiff is a fifty-three year old female with a ninth grade education, who lives with her grandson in Dallas, North. Plaintiff's grandson is fourteen years old.
2. Plaintiff worked for approximately twenty years with Western Auto, defendant-employer, prior to her injury and was employed there for the period of March 21, 1993 until October 6, 1993, following her injury. She was employed as an order filler for Western Auto on January 14, 1992, the date of her injury.
3. Prior to working at Western Auto, plaintiff was a knitter at Belmont Knitting and a spinner at Rex.
4. On January 14, 1992, plaintiff sustained a compensable injury to her back as she was lifting a hamper with another employee to place it on a conveyor belt. While attempting to lift the hamper, plaintiff felt a pull in her back.
5. Plaintiff initially presented to Health First and was referred to Dr. James A. Sanders for further orthopedic treatment.
6. Plaintiff was diagnosed by Dr. Sanders as having a lumbo-sacral sprain on January 24, 1992. She was kept out of work until February 19, 1992, when she was released to return to work.
7. Plaintiff was paid weekly compensation in the amount of $238.32 during the time period when she was out of work.
8. Plaintiff was released from the care of Dr. Sanders on April 16, 1992.
9. Plaintiff returned to work at defendant-employer's, although her back pain increased, particularly after August 19, 1992. On October 5, 1992, plaintiff complained to Dr. Sanders of pain radiating into her right leg. Dr. Sanders ordered an MRI and diagnosed a herniated disc with a herniated nuclear pulposis at L2-3 with a possibility of a free fragment. A lumbar myelogram revealed a right paracentral disc herniation at L2-3.
10. Dr. Sanders recommended surgery. Plaintiff obtained a second opinion from Dr. Alfred Rhyne, who confirmed Dr. Sanders' diagnosis.
11. Plaintiff underwent a lumbar laminectomy at L2-3 on the right, with excision of the herniated disc and a large free fragment on January 12, 1993.
12. Following the surgery, plaintiff's pain abated for approximately a week, during which time she was confined to bed. Once plaintiff began normal activities, she experienced a recurrence of her pre-surgical symptoms. Plaintiff underwent an MRI in March, 1993, which revealed post-operative changes on the right at L2-3 but with no evidence of a recurrent herniated disc. Dr. Sanders did not know the source of plaintiff's pain and referred her to Dr. Difini, whose studies did not reveal any evidence of neurologic dysfunction.
13. Plaintiff underwent another MRI in May, 1993.
14. In June, 1993, plaintiff was referred for a course of physical therapy. Subsequent to the physical therapy, Dr. Sanders released plaintiff for light duty work on July 1, 1993, for five hours a day with restrictions of not lifting more than five pounds.
15. Plaintiff had previously scheduled vacation time beginning the first of July. Therefore, she did not return to work until after her vacation on July 12, 1993. Plaintiff was paid weekly compensation during her vacation time.
16. On July 12, 1993, plaintiff returned to work as an order filler and was restricted to lifting not more than five pounds.
17. Plaintiff was not yet at maximum medical improvement. Although Dr. Sanders released plaintiff to return to work, he had never been presented with a job description. Moreover, he never lifted his five pound weight restriction or released plaintiff to a regular work schedule.
18. After her return to work in July, plaintiff complained to Dr. Sanders about being required to lift more than five pounds and being required to climb a ladder. Plaintiff estimated that the hampers which she was required to place on a conveyor belt weighed at least ten pounds or more with the cases placed in the hamper weighing approximately five pounds each.
19. As a result of plaintiff's complaints, Dr. Sanders contacted Barbara McDonald, defendant-employer's human relations manager on July 15, 1993. Dr. Sanders informed Ms. McDonald that plaintiff was not to climb ladders.
20. Dr. Sanders and Barbara McDonald agreed that plaintiff should be placed in the "RGR" job which consisted of sorting out merchandise. However, plaintiff was not given that job. Dr. Sanders also approved a counting job for plaintiff. Plaintiff worked in the counting position, which involved checking stock and required minimal lifting and bending, for approximately two to three weeks. After that time the job was given to another employee.
21. On August 11, 1993, plaintiff presented again to Dr. Sanders complaining of severe back pain, which she related to her job. At this point, she was working five hours per day.
22. Plaintiff complained of back pain with radiation into the right leg, when she presented to Dr. Sanders, on September 7, 1993. At this time, plaintiff asked to be rated and released by Dr. Sanders because she desired to seek treatment from another doctor.
23. Dr. Sanders accordingly rated plaintiff as having a fifteen percent (15%) permanent partial disability to the back and dismissed her from his care.
24. Jane Shipp had been assigned to work with plaintiff as a rehabilitation nurse. Plaintiff complained to nurse Shipp on July 26, 1993, that she was being forced to exceed Dr. Sanders' restrictions.
25. On July 14, 1993, Barbara McDonald informed Jane Shipp that defendant-employer could provide plaintiff with light duty work only on a short term basis and that she would have to perform her regular job to remain with defendant-employer on a long term basis. By September 29, 1993, plaintiff was expected to complete a ten hour shift as an order filler. At that time, plaintiff was required to repeatedly lift overhead cases of car cleaner that weighed approximately ten pounds.
26. Plaintiff experienced severe back pain and left her job on September 29, 1993 after completing approximately seven hours of work. She informed her supervisor, Dan Anthony, that she was leaving due to pain.
27. Plaintiff was out of work Friday, September 30, 1993, which was a scheduled day off. Plaintiff remained out of work Saturday and Sunday, October 1st and 2nd as well as the following Monday and Tuesday.
28. During the time that plaintiff was out of work, she contacted David Thayer, the bins manager, to inform him that she was unable to work due to back pain. Thaylor informed plaintiff of the necessity for having a doctor's excuse in order to return to work.
29. Between Friday, September 30, 1993 and October 5, 1993, plaintiff called Dr. Sanders. Dr. Sanders would not see plaintiff without authorization from the carrier.
30. Plaintiff attempted to go to the local hospital for treatment for her back after she left work on September 29, 1993, but was refused treatment due to non-payment of a bill.
31. Plaintiff attempted to see her family physician but was unable to secure an appointment.
32. Plaintiff returned to work at defendant-employer on October 6, 1993 and was terminated. Defendant-employer cited the reasons for plaintiff's discharge as unexcused absences, lack of sick days and for not following company policy by presenting doctor's excuses.
33. Plaintiff, however, had received no written warnings prior to her termination as was also specified as required by company policy. Moreover, plaintiff did not receive any assistance from defendant-employer in securing authorization to see a physician. The competent, credible, and convincing evidence of record supports a finding that plaintiff's termination was related to her compensable injury.
34. Plaintiff's termination by defendant-employer on October 6, 1993 was ill-advised and arbitrary and motivated by plaintiff's inability to resume full time work due to continued pain related to her compensable injury.
35. Plaintiff's testimony regarding her symptomology of back pain with radiation into the right leg is corroborated by the testimony of Dr. Sanders and other medical experts, and is therefore accepted as credible and convincing.
36. Plaintiff continued to be treated after her termination from employment, by Dr. Sanders, Dr. Chapman, and Dr. Hartman.
37. Plaintiff was justified in failing to complete work on September 29 and through October 5, 1994 due to severe back pain exacerbated by the requirement that she work a ten hour day and perform duties in excess of the restrictions placed upon her (and never lifted) by Dr. Sanders.
38. On October 5, 1994, plaintiff presented to Dr. Todd Chapman, who diagnosed plaintiff with an internal derangement of the right knee. Dr. Chapman did not causally relate the condition of plaintiff's knee to her injury of January 14, 1992.
39. Since Plaintiff's termination by defendant-employer, she has been unable to work or to earn wages of any kind.
40. On October 15, 1993, plaintiff presented to Dr. Mark Hartman for a neurological examination. Plaintiff's neurological exam was normal, and Dr. Hartman found no evidence of nerve root compression. However, plaintiff continued to complain of persistent back and right leg pain.
41. Plaintiff has received medical rehabilitation counseling from Caroline Fortner, and from Jane Shipp. Plaintiff has continued to be treated by Dr. Sanders, who as late as January 5, 1996, prescribed Flexeril.
42. Plaintiff is capable of sedentary to light duty work with defendant-employer. However, defendant-employer has failed to provide plaintiff with a light duty work within her medical restrictions. Plaintiff has not returned to work at the same or greater wage with defendant-employer or any other employer.
43. There is no competent, credible, or convincing evidence of record that there are suitable jobs available at other employers within plaintiff's capacity, taking into account her physical, mental and vocational limitations and her compensable injuries.
 **********
The foregoing findings of fact and conclusions of law engender the following additional
 CONCLUSIONS OF LAW
1. Plaintiff's knee problems are not causally related to the compensable injury by accident to her back, which plaintiff sustained on January 14, 1992. Therefore, plaintiff's claim with regard to her knee IS DENIED.
2. The approval of a Form 21 by the Industrial Commission relieves an employee of the initial burden of proving a disability. There is a presumption that disability continues until an employee returns to work at wages equal to those received at the time the injury occurred. Watson v. Winston-SalemTransit Authority, 92 N.C. App. 473, 475,374 S.E.2d 483, 485 (1988). (Quoting Watkins v. Motor Lines,279 N.C. 132, 137, 181 S.E.2d 588, 592 (1991).)
3. The parties in this action executed a Form 21 Agreement, approved by the Industrial Commission, and thus plaintiff receives the benefit of the presumption of disability.Franklin v. Broyhill Furniture, 123 N.C. App. 200,472 S.E.2d 382, 386 (1996). In accordance with the Form 21, plaintiff is entitled to receive 2/3rd's of her average weekly wage, or $238.32 per week, during the time in which she is temporarily totally disabled.
4. Since the plaintiff's presumption of disability continued, the burden at the initial hearing was on defendant-employer to demonstrate that plaintiff was employable. Radica v. CarolinaMills, 113 N.C. App. 440, 447, 439 S.E.2d 185, 190 (1994);Kisiah v. W. R. Kisiah Plumbing, Inc., 124 N.C. App. 72,476 S.E.2d 434 (1996), disc. rev. denied 345 N.C. 343,483 S.E.2d 169 (1997).
5. Defendants did not produce any competent, credible, or convincing evidence of record that plaintiff was unjustified in refusing suitable employment with defendant-employer or that there were suitable jobs available for her at other employers, taking into account her physical and vocational limitations. Therefore, plaintiff's presumption of continuing disability was not convincingly rebutted. Franklin, Id.
(Quoted in, Gerald A. Brown v. S N Communications, No. C0A95-1283 North Carolina Court of Appeals November 5, 1996).
6. Dr. Sanders, at plaintiff's request, gave her a fifteen percent (15%) permanent impairment rating to the back and listed her at a maximum medical improvement on September 7, 1993. A finding of maximum medical improvement is not the equivalent of a finding that an employee is able to earn the same wages earned prior to injury and does not satisfy defendant's burden of rebutting the presumption of continuing disability. A finding of maximum medical improvement is solely a prerequisite to determination of an amount of permanent disability for the purposes of N.C. Gen. Stat. § 97-31. Watson,Id; see also Radica, Id. Plaintiff, as of September 7, 1993, was not actually at maximum medical improvement, remained under work restrictions and was in need of additional medical treatment.
7. As a result of plaintiff's compensable injury by accident sustained on January 14, 1992, the failure of plaintiff's surgery and her continued pain, plaintiff has been incapable of earning wages of any kind with defendant-employer or any other employer from September 29, 1993 to the present time. N.C. Gen. Stat. § 97-29; Hilliard v. Apex Cabinet Company, 305 N.C. 593,290 S.E.2d 682 (1982).
8. Defendants did not come forward to sufficiently rebut plaintiff's presumption of continuing disability by supplying competent, credible, or convincing evidence of record that there were suitable jobs available to plaintiff or that she could obtain and retain employment taking into account her physical and vocational limitations. Kennedy v. Duke University MedicalCenter, 101 N.C. App. 24, 398 S.E.2d 677 (1990).
9. Defendant-employer's termination of plaintiff's employment was arbitrary in nature and motivated by her inability to work ten (10) hour days and thus was related to her compensable injury sustained on January 14, 1992.
10. Plaintiff has been totally incapacitated since September 29, 1993 and has been unable to earn wages of any kind. Plaintiff is entitled to be compensated for temporary total disability from the time of September 29, 1993, through the present time. Plaintiff's temporary total disability will continue, and she is entitled to be compensated at the rate of $238.32 per week, until she either returns to work or until further order of the Commission.
11. As a result of plaintiff's compensable injury by accident and the chronic pain resulting therefrom, plaintiff requires continuing monitoring and medical care and treatment in order to effect a cure, give relief or lessen her period of disability. Should defendants object to the authorization of any particular physician or treatment, authorization should be immediately sought from the Commission. N.C. Gen. Stat. § 97-25;Little v. Penn Ventilator, 317 N.C. 206, 345 S.E.2d 204
(1986).
 **********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
 AWARD
1. Plaintiff's claim for treatment for derangement to the right knee is not related to her compensable back injury and must be and hereby is DENIED.
2. Subject to the attorney's fees hereinafter awarded, defendants shall pay temporary total disability to plaintiff at the rate of $238.32 per week from September 29, 1993 through the present time and continuing, subject to attorney's fees provided below until plaintiff returns to work or until further order of the Industrial Commission.
3. Plaintiff's temporary total disability benefits from September 29, 1993 to the present time have accrued and shall be paid in a lump sum directly to plaintiff, subject to attorney's fees.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due under paragraphs two and three is approved and shall be paid as follows: Twenty-five percent (25%) of the lump sum amount due plaintiff under paragraph three shall be deducted and paid directly to plaintiff's attorney; henceforth, every fourth compensation check shall be paid directly to plaintiff's attorney.
5. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff, as a result of her compensable injury by accident to her back on January 14, 1992 and the chronic pain ensuing therefrom, as long as such treatments are or may be reasonably required to effect a cure, give relief or will tend to lessen plaintiff's period of disability, when bills for the same have been properly submitted through the carrier.
6. Defendants shall pay the costs.
This case is ORDERED REMOVED from the Full Commission docket.
This the ____________ day of _______________, 1998.
 S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING: S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
JHB/kws